**LATIKA HILL, As Personal
Representative of The Estate of
JEROME ALLEN, JR., Deceased,**

      **Plaintiff,**

**vs.**                           **CASE NO.: 3:19-cv-00233-TJC-MCR**

**THE CITY OF JACKSONVILLE; The
Jacksonville Sheriff's Office;
MIKE WILLIAMS, In His Official
Capacity as Sheriff of The
Consolidated City of Jacksonville and
Duval County, Florida; and**             **DISPOSITIVE MOTION**
**OFFICER KYLE KVIES,
OFFICER LANCE GRIFFIS,
OFFICER BRIAN TURNER,
and SERGEANT CLAYTON SHORT,**

      **Defendants.**

_____/

**DEFENDANTS KVIES AND GRIFFIS' MOTION TO DISMISS
WITH PREJUDICE WITH INCORPORATED MEMORANDUM OF LAW**

COME NOW, the Defendants KYLE KVIES and LANCE GRIFFIS ("Officers"), by and

through the undersigned attorney, pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, and

hereby move to dismiss Count II, "Unreasonable Seizure," and Count IV, "Failure to Intervene,"

of the Plaintiff's Complaint (Doc. 2), with prejudice, for failure to state a claim upon which relief

can be granted.  In support therefor, the Officers state:

**FACTUAL BASIS**

According to the Complaint, Officers Kvies, Griffis and Turner were employed by the

Jacksonville Sherriff's Office as police officers, acting under the color of state law, within the

course and scope of their duties.  Doc. 2, ¶¶ 8, 9, 10.  On February 6, 2017, the Officers "occupied

a vehicle while purportedly being involved in a low-level drug buy." Id. at ¶ 11. During their undercover drug buying operation, the decedent, Jerome Allen, approached the Officers with a firearm and attempted to rob them at gun-point. Id. at ¶ 12. In response, Turner shot and killed the decedent. Id. at ¶ 13. The Complaint proceeds to articulate that the Officers removed "alcoholic beverages from their vehicle," and that they were later, "arrested for charges of Tampering with Evidence and Criminal Conspiracy." Id. at ¶¶ 14, 15.

## ARGUMENT

The federal claims against Officers Kvies and Griffis, Count II, "Unreasonable Seizure," and Count IV, "Failure to Intervene," are due to be dismissed because the Officers violated no rights guaranteed to the decedent under the United States Constitution. There is no dispute that Turner seized the decedent in using deadly force against him, however Turner's seizure of the decedent does not support an unreasonable seizure or excessive force claim against Kvies or Griffis. Furthermore, Turner did not violate the Constitution with his use of deadly force against the decedent, who was committing a forcible felony at the time he was killed. Thus, the claim against Kvies and Griffis for failing to intervene should not survive, as there was no Constitutional violation that required intervention. Without establishing a Constitutional violation, Kvies and Griffis are protected by qualified immunity from claims brought against them individually, as they acted within the scope of their discretionary authority and violated no clearly established law.

## I. Motions to Dismiss and Qualified Immunity Standards

Rule 8 of the Federal Rules of Civil Procedure requires a "short and plain statement of the claim" that will "give the Defendant fair notice of what the Plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct 99, 103 (1957) (quoting Rule 8(a)(2), Fed. R. Civ. P.). When ruling on a motion to dismiss under Federal Rule of Civil

Procedure 12(b)(6), a court must limit its consideration to the complaint, the written instruments attached to it as exhibits, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007). In determining the merits of the motion, a court must "accept all factual allegations in the complaint as true." *Id.* at 323.

To survive a motion to dismiss, a complaint must contain sufficient facts, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009). Pursuant to the traditional view, the District Court may only grant a Rule 12(b)(6) motion to dismiss where it has been demonstrated "beyond doubt that the plaintiff can prove no set of facts in support of his claim to relief. *Conley*, 355 U.S. at 45-46. However, the Supreme Court has since fine-tuned the standard to reflect that the dismissal standard was one of plausibility under which a complaint must contain enough facts to state a claim that raises the "right to relief above the speculative level," or it will be dismissed. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

In *Iqbal*, the Court further elaborated on its opinion in *Twombly*, succinctly stating:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. * * * Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

*Iqbal*, 129 S.Ct. at 1949-50 (internal citations omitted). Accordingly, "bare assertions" that "amount to nothing more than a 'formulaic recitation of the elements'" of a claim, should be rejected as "conclusory and [are] not entitled to be assumed true." *Iqbal*, 129 S.Ct. at 1951 (internal citations omitted); *see also, S.D. v. St. Johns County School Dist.*, 22 Fla. L.Weekly Fed. D7, 2009 WL 2381287 *1-2 (M.D.Fla.).

Although the threshold is "exceedingly low" for a complaint to survive a motion to dismiss for failure to state a claim, a court may nonetheless dismiss a complaint on a dispositive issue of law. *Day v. Taylor*, 400 F. 3d 1272, 1275 (11th Cir. 2005). Additionally, where the facts alleged are conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts, the complaint may be subject to dismissal. *Davila v. Delta Airlines, Inc.*, 326 F. 3d 1183 (11th Cir. 2003). Dismissal is warranted if, assuming the truth of the factual allegations of the plaintiff's Complaint, there is a dispositive legal issue that precludes relief. *See Neitzke v. Williams*, 490 U.S. 319, 326 (1989).

The Complaint, on its face, demonstrates that the Officers are entitled to qualified immunity and it should be dismissed before discovery. Qualified immunity is a protection designed to allow government officials to avoid the expense and disruption of trial. *Ansley v. Heinrich*, 925 F.2d 1339, 1345 (11th Cir. 1991). The "entitlement" of qualified immunity is "immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511 (1985). The Supreme Court of the United States has rejected the argument that qualified immunity cannot be granted before discovery and stated that "qualified immunity questions should be resolved at the earliest possible stage of litigation." *Anderson v. Creighton*, 483 U.S. 635 (1987).

A public official performing a discretionary function enjoys qualified immunity in a civil action for damages provided his or her conduct does not violate clearly established federal or

constitutional rights of which a reasonable person should have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The immunity is "immunity from suit, rather than a mere defense to liability" and it is "effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsythe*, 472 U.S. 511, 526 (1985). The driving force behind the creation of the qualified immunity doctrine was a desire to ensure that "insubstantial claims against government officials [will] be resolved prior to discovery." *Anderson v. Creighton*, 483 U.S. 635, 640 n. 2 (1987).

When a trial court must determine whether a defendant may benefit from qualified immunity, the Supreme Court has in the past mandated that the trial court must first determine whether the defendant's conduct violated a Constitutional right. *Saucier v. Katz*, 533 U.S. 194 (2001). Once that has been determined, only then does the analysis take the next step to determine whether the defendant violated clearly established law at the time of the alleged misconduct. *Id.* The Supreme Court, however, reconsidered this rigid approach and concluded that "while the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory." *Pearson v. Callahan*, 555 U.S. 223 (2009). Lower courts are now permitted to exercise their discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand. *Id*.

Based on the allegations of the Complaint, the Officers should benefit from qualified immunity, as no violation of the Constitution can be established under these facts. Kvies and Griffis did not seize the decedent, thus there can be no claim for a violation of the Fourth Amendment. Moreover, Turner's use of deadly force was entirely reasonable under the circumstances, thus the derivative claim for failure to intervene cannot survive as Turner did not violate the Constitution. Even assuming that the Court finds Turner's use of deadly force to be arguably unreasonable, the Plaintiff cannot point to any clearly established law holding that an

officer who does not intervene in the use of deadly force by another officer, while the shooting officer is being robbed at gunpoint, violates the Constitution. Under either prong of the analysis, the Officers should benefit from qualified immunity.

## II.    Kvies and Griffis Did Not Seize the Decedent

In Count II the Plaintiff asserts a claim against Kvies and Griffis for violating the Fourth Amendment stating, "Defendants Kvies and Griffis are also responsible via their conduct although they did not pull the trigger." Doc. 2, ¶ 23. In other words, Kvies and Griffis' very presence at a police-involved shooting is sufficient to hold them responsible for violating the Constitution. In contrast, the Eleventh Circuit has held, "in a § 1983 action, 'a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Keating v. City of Miami*, 598 F.3d 753, 763 (11th Cir. 2010) (*quoting Iqbal*, 556 U.S. at 676 (2009)).

In order for the Plaintiff to establish a violation of the decedent's Fourth Amendment rights, she must first show that the decedent was seized by a government official. *Brower v. County of Inyo*, 489 U.S. 593, 596 (1989). The Plaintiff cannot do this because neither Kvies nor Griffis used force, and thus never seized the decedent. A seizure occurs, "only when there is a governmental termination of freedom of movement *through means intentionally applied*." *Id*. at 597 (emphasis in original). Even where an unintended person is the object of the detention, the detention itself must be willful. *Id.* "An intentional seizure of a person 'readily bears the meaning of a laying on of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful.'" *Carr v. Tatangelo*, 338 F.3d 1259, 1268 (11th Cir. 2003) (*citing California v. Hodari D.*, 499 U.S. 621, 626 (1991)). More specifically, "[i]t is intervention directed

at a specific individual that furnishes the basis for a Fourth Amendment claim." *Troupe v. Sarasota County*, 419 F. 3d 1160, 1166-67 (11th Cir. 2005) (citations omitted).

According to the Complaint, the three individual defendants were together in a vehicle, engaged in a low-level undercover drug purchase. Doc. 2, ¶ 11. When the decedent attempted an armed robbery of the three individual defendants, Turner shot and killed the decedent. Id. at ¶¶ 12, 13. There is no allegation that Kvies or Griffis used force or restraint of any kind against the decedent. Absent force "directed at a specific individual," there can be no seizure, and without a seizure, there can be no violation of the Fourth Amendment to the United States Constitution. As there is no Constitutional violation by Kvies or Griffis, Count II is due to be dismissed as against them.

## III. Kvies and Griffis Did Not Fail to Intervene in a Violation of the Constitution

As a general proposition, an officer who is present and fails to take reasonable steps to protect the victim of another officer's use of excessive force, even though he administered no blow, can be held personally liable for his nonfeasance. *Velazquez v. City of Hialeah*, 480 F. 3d 1232 (11th Cir. 2007). Nevertheless, while an officer has an affirmative duty to prevent another from violating an individual's constitutional rights, the officer must have a realistic opportunity to prevent the illegal conduct and must be in a position to intervene. *Ensley v. Soper*, 142 F. 3d 1402 (11th Cir. 1998); *Byrd v. Clark*, 783 F. 2d 1002 (11th Cir. 1986); *see also Thompson v. Boggs*, 33 F. 3d 847 (7th Cir. 1994); *Yang v. Hardin*, 37 F. 3d 282 (7th Cir. 1994).

However, it goes without saying that an officer cannot be held liable for failing to intervene where there is no Constitutional violation. *See e.g., Jackson v. Sauls*, 206 F.3d 1156, 1174 (11th Cir. 2000) ("Unlike [the shooting officers], [the non-shooting officer] never fired his weapon or employed deadly force… Since [the shooting officer] is entitled to qualified immunity on his use

of deadly force, there is no derivative claim against [the non-shooting officer]." *See also Hardy v. Daly*, 748 F. App'x 379, 381 (2d Cir. 2018)("there can be no failure to intervene ... where there was no constitutional violation"); *Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005)("In order for there to be a failure to intervene, it logically follows that there must exist an underlying constitutional violation."); *cf., Gill v. City of Milwaukee*, 850 F.3d 335, 343 (7th Cir. 2017).

### a.     Turner's Use of Deadly Force Did Not Violate the Fourth Amendment

Turner's use of deadly force is governed by the Fourth Amendment to the U.S. Constitution, made applicable to the states through the Fourteenth Amendment.  It is well established that a seizure is subject to the "reasonableness requirement" of the Fourth Amendment. "The test of reasonableness under the Fourth Amendment is not capable of precise mechanical application." *Graham v. Conner*, 490 U.S. 386, 396 (1989).  The overall focus of an inquiry to determine the constitutionality of a seizure is the judicial balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.  *Tennessee v. Garner*, 471 U.S. 1, 8 (1985).

To conduct this balancing, the Supreme Court developed a three-prong analysis, admonishing the lower courts to pay "careful attention to the facts and circumstances of each particular case at issue." *Graham*, 490 at 396 (1989).  In determining the reasonableness of the force the trial court must evaluate (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight.  *Id.*  The evaluation must be made from the "perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.*  The evaluation must be tolerant of the fact that police officers often lack time for

reflection before they act, and the evaluation is an objective one, an officer's subjective motivations are not considered. *Id.*

To further refine the determination of whether an officer's use of deadly force is reasonable, the Eleventh Circuit has given us added guidance. Deadly force is "reasonable" for the purposes of the Fourth Amendment when an officer "(1) has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others or that he has committed a crime involving the infliction or threatened infliction of serious physical harm; (2) reasonably believes that the use of deadly force was necessary to prevent escape; and (3) has given some warning about the possible use of deadly force, if feasible." *Robinson v. Arrugeta*, 415 F. 3d 1252, 1255 (11th Cir. 2005). Lastly, the reasonableness inquiry in an excessive force case is an objective one; the question is whether the officer's actions are 'objectively reasonable' in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation." *Crosby v. Monroe County,* 394 F.3d 1328, 1333 (11th Cir.2004).

There is no question that Turner "seized" the decedent, for Constitutional purposes, by the use of deadly force. Likewise, there is no question that the seizure was reasonable. Police are authorized to use deadly force to apprehend a felon, where the felon poses a risk of serious physical harm to the officer or others. *See Robinson, supra*. The decedent placed a gun in Turner's face, while attempting to rob him. Turner reasonably believed the decedent posed a risk of serious physical harm to him, Kvies and Griffis. As recognized by *Garner*, an officer is allowed to use deadly force to apprehend a felon where he has probable cause to believe the felon poses a serious risk to the officers or others. At the moment Turner fired his weapon the decedent was pointing a

gun[1] at Turner, attempting an armed robbery, which is a forcible felony under Florida law.[2] "Although suspects have a right to be free from force that is excessive, they are not protected against a use of force that is necessary in the situation at hand." *Lee v. Ferraro*, 284 F.3d 1188, 1197 (11th Cir.2002).

As explained above, *Graham* admonished the lower courts to pay "careful attention to the facts and circumstances of each particular case at issue." *Graham*, 490 at 396 (1989). Under *Graham's* three-pronged analysis, deadly force was warranted here. First, armed robbery is so severe a crime, Florida statutes enumerate it as a forcible felony. Second, there could be no more of an immediate threat than an armed robber approaching a person seated in a vehicle, pointing a gun at the victim and demanding money. Third, although the event occurred so quickly and the danger so great that the Officers could not attempt an arrest of the decedent, the severity of the crime and gravity of the threat significantly weigh in favor of constitutionality.

Further, under the analysis articulated by the Eleventh Circuit in *Robinson v. Arrugeta*, Turner's deadly force is reasonable. Deadly force is "reasonable" for the purposes of the Fourth Amendment when an officer "(1) has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others or that he has committed a crime involving the infliction or threatened infliction of serious physical harm; (2) reasonably believes that the use

---

[1] Although the Complaint asserts that it was subsequently found that the gun was not real (Doc. 2, ¶ 12), it is of no consequence. From Turner's perspective, the gun was real. "The only perspective that counts is that of a reasonable officer on the scene at the time the events unfolded." *Garczynski v. Bradshaw*, 573 F.3d 1158, 1166 (11th Cir.2009).

[2] § 812.13, Fla. Stat.; Robbery — "(1) 'Robbery' means the taking of money or other property which may be the subject of larceny from the person or custody of another, with intent to either permanently or temporarily deprive the person or the owner of the money or other property, when in the course of the taking there is the use of force, violence, assault, or putting in fear. (2)(a) If in the course of committing the robbery the offender carried a firearm or other deadly weapon, then the robbery is a felony of the first degree, punishable by imprisonment for a term of years not exceeding life imprisonment or as provided in s. 775.082, s. 775.083, or s. 775.084."

§ 776.08, Fla. Stat. defines the term "forcible felony" to mean those crimes expressly enumerated, including robbery. *Cala v. State*, 854 So. 2d 840, 840 (Fla. 3d DCA 2003).

of deadly force was necessary to prevent escape; and (3) has given some warning about the possible use of deadly force, if feasible." 415 F. 3d at 1255. The facts articulated above that weigh in favor of Turner in the *Graham* analysis, also support a finding of reasonable use of deadly force in the *Arrugeta* analysis.

Clearly, the decedent posed a risk of serious bodily harm while committing an armed robbery, and Turner had reason to believe the threat was real. The decedent committed a forcible felony in the Officers' presence; thus, under Florida law they could take him into custody.[3] Considering that the decedent was using a firearm to commit a forcible felony, Turner could reasonably believe that deadly force was necessary to prevent the decedent from escaping and further endangering the community. In a case where an officer encountered a suspect waiting to ambush him with a firearm, the Eleventh Circuit held that when a suspect's "gun was available for ready use, [the officer] was not required to wait and hope for the best. The law does not require officers in a tense and dangerous situation to wait until the moment a suspect uses a deadly weapon to act to stop the suspect." *Jean-Baptiste v. Gutierrez*, 627 F. 3d 816, 821 (11th Cir. 2010). Turner's use of deadly force was Constitutional and reasonable, thus the failure to intervene claims against Kvies and Griffis are due to be dismissed.

### b. Turner's Use of Deadly Force Did Not Violate Florida Law

Turner is immune from civil liability under Florida law by Florida's Stand Your Ground Law, which provides in part:

> A person who uses or threatens to use force as permitted in s. 776.012, s. 776.013, or s. 776.031 is justified in such conduct and is immune from criminal prosecution and civil action for the use or threatened use of such force by the person, personal

---

[3] See § 901.15(1), Fla. Stat., which reads in part: "A law enforcement officer may arrest a person without a warrant when… The person has committed a felony or misdemeanor or violated a municipal or county ordinance in the presence of the officer."

representative, or heirs of the person against whom the force was used or threatened, unless the person against whom force was used or threatened is a law enforcement officer, as defined in s. 943.10(14), who was acting in the performance of his or her official duties and the officer identified himself or herself in accordance with any applicable law or the person using or threatening to use force knew or reasonably should have known that the person was a law enforcement officer.

§ 776.032(1), Fla. Stat.  The Stand Your Ground Law eliminates the common law duty to retreat before using force in self-defense.  *Kumar v. Patel*, 227 So. 3d 557, 559 (2017).  Law enforcement officers are eligible under Florida's Stand Your Ground Law to assert the immunity, even when the use of force occurred in the course of making a lawful arrest.  *State v. Peraza*, 259 So. 3d 728, 731 (Fla. 2018).

Alternatively, Florida Statutes provide for a defense to civil actions for those individuals that use force, in conformance with the law, against a plaintiff who was either committing or attempting to commit a forcible felony.  The parameters of the defense are as follows:

(1)     It shall be a defense to any action for damages for personal injury or wrongful death, or for injury to property, that such action arose from injury sustained by a participant during the commission or attempted commission of a forcible felony.  The defense authorized by this section shall be established by evidence that the participant has been convicted of such forcible felony or attempted forcible felony, or by proof of the commission of such crime or attempted crime by a preponderance of the evidence.

(2)     For the purposes of this section, the term "forcible felony" shall have the same meaning as in s. 776.08.

Fla. Stat. § 776.085.

As fully articulated above, the decedent was committing an armed robbery, a forcible felony, when Turner shot and killed him.  In an unpublished opinion that provides persuasive value in this matter, the Eleventh Circuit considered a case where a decedent committed an aggravated assault against several police officers.  *Whittier v. City of Sunrise, et al.*, 395 Fed.Appx. 648 (11th Cir. 2010).  Marlene Whittier, as personal representative of the estate of Anthony Diotaiuto, brought an action against the city of Sunrise, Florida and several officers individually.  The officers

were assigned to the city's SWAT team who came to Diotaiuto's home to serve a search warrant. After knocking on the door, then entering the house, they found Diotaiuto and ordered him to the ground. Diotaiuto ignored the officers' commands and retreated to a back bedroom, closing the door. The officers then entered the bedroom, where Diotaiuto had armed himself with a gun and pointed it at the officers. The officers shot Diotaiuto, who died from his injuries. *Id*. at 651.

The Eleventh Circuit recognized that an aggravated assault falls within the definition of a forcible felony and Florida Statute recognizes a defense to any action for damages when the plaintiff is committing or has committed a forcible felony. Additionally, the Court acknowledged that under Florida law individuals are not permitted to resist an arrest, even an illegal arrest, with violence. *Id*. at 652, fn. 9. (*citing Lowery v. State*, 356 So.2d 1325, 1326 (Fla. 4th DCA 1978)). *See also, Gonzalez v. Liberty Mut. Ins. Co.*, 634 So. 2d 178 (Fla. 3d DCA 1994) (Estate of decedent, who was burglarizing an occupied dwelling when homeowner shot and killed decedent, could not recover for wrongful death because decedent was attempting to commit a forcible felony at the time homeowner discharged his weapon); *Fernandez v. City of Cooper City*, 207 F. Supp. 2d 1371, 1381 (S.D. Fla. 2002) (municipal defendant not liable for wrongful death of decedent, pursuant to § 776.085, when decedent resisted arrest with violence, a forcible felony under Florida law).

## IV.    The Officers Did Not Violate Clearly Established Laws

In determining whether to grant an officer qualified immunity, the Court must "conduct its review through the eyes of an objective, reasonable government official" and determine whether "a reasonable official [could] have believed his or her actions to be lawful in light of clearly established law and the information possessed by the official at the time the conduct occurred." *Nicholson v. Georgia Dept. Of Human Resources*, 918 F.2d 145, 147 (11th Cir. 1990). In this

circuit, whether the law is clearly established should be of little doubt to the official. The Eleventh

Circuit has articulated that:

> "for the law to be clearly established to the point that qualified immunity does not apply, the law must have earlier been developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that 'what he is doing' violates federal law... for qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel (*not just suggest or allow or raise a question about*), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances."

*Jenkins v. Talladega City Bd. of Educ.*, 115 F.3d 821, 823 (11th Cir. 1997) (emphasis added). *See also Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005) (a plaintiff must (1) cite to similar case law that would have put police on notice; (2) show a broader, clearly established principle; or (3) show that the violation is so obvious that there is no need for prior case law).

Kvies and Griffis have not been able to identify a case holding that an officer nearby a second officer who shoots an armed robber, while the robbery is in progress, violates the Constitution. The only case that even comes close to such a scenario is *Jackson v. Sauls*, *supra*. In *Jackson*, the defendants, three undercover police officers, stopped the three plaintiffs and a gun-battle ensued. *Jackson*, 206 F.3d at 1162 (11th Cir. 2000). According to the summary judgment evidence offered by the plaintiffs, the three undercover officers did not identify themselves as police officers and were standing next to one another when the shooting erupted. *Id*. at 1162-63. Two officers fired, while a third did not. *Id*. After extensive discussion of the facts as they applied to the Fourth Amendment analysis, the Eleventh Circuit concluded that the shooting officers' actions merited a grant of qualified immunity on the excessive force claims against them. *Id*. at 1173-74. The Court further explained that since qualified immunity was granted on the excessive force claims, the failure to intervene claim against the one non-shooting officer failed as well.

Additionally, the undisputed evidence in *Jackson* established that one of the shooting officers, Pinckney, did not fire at two of the three plaintiffs, Wimbush and Williams. *Jackson*, 206 F. 3d at 1173. The Court granted qualified immunity to Pinckney on Wimbush and Williams' excessive force claims because even though Pinckney shot the third plaintiff, he never directed fire at either of them. The Court's reasoning in *Jackson* is informative when contrasting Pinckney's actions with those of Kvies and Griffis here. The Eleventh Circuit granted Pinckney qualified immunity because, although he shot and killed one of the plaintiffs, he didn't shoot at the other two, thus qualified immunity inured to Pinckney on their excessive force claims. Kvies and Griff not only didn't shoot at the decedent, they didn't shoot at all. The law in the Eleventh Circuit is not clearly established that being near a shooting officer during a gun battle establishes a viable claim under the Fourth Amendment to the United States Constitution. Qualified immunity is due to be granted to Kvies and Griffis on all of the Plaintiff's claims.

## CONCLUSION

The Officers conducted themselves professionally in a dangerous and dynamic situation. The Plaintiff has not established a Constitutional violation and the Officers are entitled to qualified immunity.

WHEREFORE, the Officers respectfully move this Honorable Court to dismiss Counts II and IV of the Complaint.

Respectfully submitted,

**PAUL DARAGJATI, P.L.C.**

*/s/   Paul A. Daragjati*
**PAUL A. DARAGJATI, ESQ.**
Florida Bar No. 713813
paul@daragjatilaw.com
5530 Beach Blvd.
Jacksonville, FL 32207
Telephone:    (904) 398-7010
Fax:             (904) 398-7192
Counsel for Kvies and Griffis

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on Sunday, May 05, 2019, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system.  I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants: N/A.

*/s/   **Paul A. Daragjati***
*Attorney for Kvies and Griffis*